IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIK GAEK, INC.<br><br>    Plaintiff,<br><br>vs.<br><br>PARK, et al.,<br><br>    Defendants. | Case No. 1:13CV6624<br><br>Hon. James F. Holderman |

**HARRIS' CONSOLIDATED MOTIONS FOR RELIEF
AND PROTECTIVE ORDER**

Third party witness, Attorney Marcus Harris, moves this court for relief from this court order to comply with Plaintiff's subpoena (D.E.13) and for a protective order.

**I.    INTRODUCTION**

All the issues in this case could have been resolved if Plaintiff had simply met and conferred with Attorney Harris before filing this case. This case arose from Plaintiff's misguided attempt for a fishing expedition in confidential and privileged work product of Attorney Harris. In addition to violating the local rules of this district by not meeting and conferring with Attorney Harris, it appears that the Plaintiff may have also violated other rules by misrepresenting to this court that the Plaintiff has served Attorney Harris with the documents filed in this case, when in fact he didn't. The Plaintiff expects this court to reward him a windfall of more than six thousands dollars for his own misconduct and for simply coming to Chicago during summer time.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

1. Marcus Harris is an Illinois attorney and has been licensed to practice law since 1999. In his fourteen years of practicing law, Marcus Harris has never been

sanctioned by any court, has never been subject to attorney discipline, and has never been accused of malpractice. (Exhibit A, ¶2).

2. Attorney Harris practices primarily in the area of trademark law. On October 16, 2007, he filed federal trademark application numbers 77304837, 77304836, 77304835, 77304834, 77304833 on behalf of Yogi's II, Inc. (Exhibit A, ¶3)

3. On July 17, 2013, Thomas Park of Kim Law Firm served Marcus Harris with a subpoena requesting his deposition and files related to the filing of the trademarks referenced above. Said deposition was set to take place on July 29, 2013. (Exhibit B)(Exhibit A, ¶4)

4. On or about July 26, 2013, Marcus Harris and Thomas Park had a telephone conversation to discuss the deposition. At that time, Mr. Harris informed Mr. Park that the information he sought was privileged and confidential privileged and confidential. Mr. Harris also told Mr. Park that trademark filings are publicly available on the website of the USPTO. Mr. Harris told Mr. Park that the deposition would be pointless since all information sought is either privileged or publicly available. (Exhibit A, ¶5)

5. In the Declaration of Thomas W. Park in Support of Plaintiff's Motion to Enforce Subpoena (D.E.1-1), Mr. Park writes that "On or about July 26, 2013, we received a telephone call from Mr. Harris advising that he would not be complying with the subpoena served upon him by plaintiff's process sever on July 17, 2013, for undisclosed reasons." This is false. Marcus Harris never stated that he would not be complying with the subpoena. Nor did he have "undisclosed reasons" for questioning Mr. Park's wisdom in deposing him. Mr. Harris clearly

2

told Mr. Park that the reasons the deposition would be pointless is that all information sought is either privileged or public record. (Exhibit A, ¶6)

6. Mr. Park never sent an email to Mr. Harris confirming Mr. Park's understanding of the conversation of July 26, 2013 alleging that Mr. Harris "would not be complying with the subpoena". (Exhibit A, ¶7)

7. Mr. Park did not take Mr. Harris' deposition on the scheduled date of July 29, 2013. Mr. Harris was available to be deposed and would have provided testimony and documents, which were not privileged. (Exhibit A, ¶8)

8. Mr. Harris is a solo practitioner and his practice comprises mostly trademark filings and arbitrations. Nearly all of his communication is via email and telephone. He does not generally litigate in court and, during all relevant times, did not have any cases pending in any state or federal courts. His practice does not have any matters in which he expects to be served with regular (non-electronic) mail. (Exhibit A, ¶9)

9. Mr. Harris performs most of his work from a computer at home. He also subleases a space with other attorneys at 10 S. LaSalle St., Suite 3500, IL 60603. He has his name on the door, collects mail, and can use a conference room or office at an hourly rate. He does not have a permanent dedicated office at that location and does not spend a great deal of time there. (Exhibit A, ¶10)

10. Mr. Harris does not employ a secretary and answers his own telephone calls. The receptionist at 10 S. LaSalle does not work for him. She accepts incoming mail and communications and puts them in his mailbox. The receptionist does not analyze incoming mail for its importance. The receptionist does not call him when

a new piece of mail arrives. He always checks his mail at that location but does not do so every day. (Exhibit A, ¶11)

11. No one from the Kim Law Firm ever called Mr. Harris to meet and confer prior to filing any motion to enforce the subpoena. Mr. Park did not say anything, during the July 26, 2013 telephone conference, or at any other time, about him seeking any court action with regards to the deposition. (Exhibit A, ¶12)

12. Having reviewed his mailbox at 10 S. LaSalle St, Mr. Harris did not find any notice of Mr. Park's motion, (D.E.1) nor a copy of the Court's order (D.E.13), to enforce the subpoena in the above-identified case. Prior to October 29, 2013, Mr. Harris had no knowledge of Mr. Park's motion to enforce the subpoena or the court's order. (Exhibit A, ¶13)

13. Mr. Harris diligently checks his telephone and email daily, and did not receive any telephone calls or emails from Mr. Park or the Kimm Law Firm notifying him of the October 29 deposition. Mr. Harris does not employ a secretary or receptionist to answer his phone. He answer all telephone calls to his telephone number. Contrary to declaration of Mr. Park, that Mr. Park spoke to Mr. Harris' secretary on October 22, 2013, Mr. Harris did not receive any phone call on October 22, 2013, from Mr. Park. Mr. Harris has reviewed the log of phone calls made to his office line number: 312.263.0570, on October 22, 2013. The log shows phone call received from the following numbers: 773-233-9401, 207-846-8047 and 312-972-9656. Area code 207 belongs to north of Maine. None of the above-identified phone numbers belong to Mr. Park, whose phone number is 201.569.2880 and whose cell phone number is 267.600.8183. (Exhibit A, Par ¶14)

4

14. Marcus Harris was out of the office and on vacation the week of October 22, 2013, celebrating his father's 70th birthday with his family in New York City. He was on vacation when Mr. Park allegedly sent a fax to the office advising of the court order on October 22, 2013. Marcus Harris never received any emails from Mr. Park notifying him of the Court's order or the new deposition date. (Exhibit A, ¶15)

15. Marcus Harris first had knowledge of the Court's order, and the deposition date of October 29, on October 29, 2013 at 12:41 p.m., when the office suite receptionist called Mr. Harris and told him that an attorney and court reporter were waiting in the office suite, and then handed the telephone to Mr. Park. (Exhibit A, ¶16)

16. When Mr. Harris spoke with Mr. Park on the telephone on October 29, 2013, at 12:41 pm, Mr. Harris told Mr. Park that he was working from home and would rush to meet him at his office, but would not get there until about 2 p.m. (Exhibit A, ¶17)

17. Mr. Park refused to take Mr. Harris' deposition on October 29. Mr. Park said that he had to catch the train back to the airport at 1:00 p.m. (Exhibit A, ¶17) (The deposition was to start at 12 p.m. Mr. Park had apparently planned the deposition to take less than an hour.

18. Mr. Harris then offered to drive Mr. Park to the airport so that the deposition could proceed. Mr. Park refused to take Mr. Harris' deposition. (Exhibit A, ¶18)

19. Mr. Harris then offered to be deposed on the spot via telephone so that the deposition could proceed. Mr. Park refused to take Mr. Harris' deposition. (Exhibit A, ¶19)

20. In the Declaration of Thomas W. Park in Support of Plaintiff's Motion to Enforce Subpoena (D.E.1-1), Mr. Park writes that "During our conversation, Mr. Harris stated he was aware of the Court Order and would be willing to do a deposition, but he state was unavailable at the moment and it would take him at least one hour or more to arrive at his office." This statement is false. Mr. Harris did not tell Mr. Park that he was aware of the Court Order. Mr. Harris told Mr. Park the opposite: That he had no knowledge of the court order but, now that he was aware, Mr. Harris would rush to meet him and would comply with the Court Order. (Exhibit A, ¶21)

21. Rather than take Mr. Harris deposition, Mr. Park left to go back to New York.

22. That same day, October 29, 2013, Mr. Harris sent a faxed letter to Mr. Park. Said letter states "I have every intention of complying with the court's order. I have organized documents that I believe are responsive to your document request in an electronic folder. Please provide me your email address so that I can provide you with a link to access that folder. …. I can be available this week to be deposed either telephonically or by video. Please propose times that work with your schedule." (Exhibit D)

23. Mr. Park did not respond to Mr. Harris' fax of October 29. He did not send him a date for a future deposition. Mr. Park did not notify Mr. Harris of a future date for deposition, did not provide an email so Mr. Harris could provide responsive documents, and did not coordinate a telephone or Skype deposition. (Exhibit A, ¶25)

24. On Friday, November 1, 2013, Mr. Park and Mr. Harris' attorney Martin Jerisat,

exchanged emails, and missed each other's telephone calls. Mr. Park told Mr. Jerisat, via email, that he would call Mr. Jerisat on Monday, November 4. Mr. Park never called Mr. Jerisat on Monday. (Exhibit F)

25. Mr. Park and the Kimm Law Firm never met and conferred with Mr. Harris or his attorneys prior to filing the contempt petition. They never called or emailed to follow up on Mr. Harris offer to submit to a deposition. (Exhibit A, ¶24, Exhibit F, Exhibit G)

26. On November 6, 2013, Mr. Harris' attorney, Gus Kostopoulos, sent a letter to Mr. Park via email, facsimile transmission, regular and certified mail. Said letter writes: "Mr. Harris continues to be available for deposition, as he has been available for deposition since he found out about this matter for the first time on October 29, 2013. Unless you contact us to coordinate the deposition, there is nothing more that Mr. Harris can do to comply. Please contact me, via email at gus@kostlaw.com, at your earliest convenience to schedule his deposition." (Exhibit G, Exhibit H)

27. Mr. Park did not email or call Mr. Kostopoulos to schedule Mr. Harris' deposition. (Exhibit G)

28. Mr. Kostopoulos' letter of November 6, 2013, also requested that the Kimm Law Firm meet and confer in order to resolve this matter. He writes "Since this entire problem arises out of a miscommunication, I think it is important that we speak for a few minutes to better coordinate things. I would like to schedule a brief conference call to discuss this matter with you. I am available at any time on Friday November 8. If you are unavailable on Friday, please email me available

7

times next week. Please email what time(s) you are available to speak. Thank you to your attention to this matter. I look forward to an amicable resolution." (Exhibit H)

29. Since the filing of the contempt petition, Mr. Park and Kimm Law Firm never emailed available dates to talk and did not communicate with Mr. Harris' attorneys in any way. (Exhibit G)

30. On Friday, November 8, 2013, Mr. Kostopoulos called the Kimm Law Firm to speak with Mr. Park. A receptionist told Mr. Kostopoulos that Mr. Park was unavailable to speak that day but would call back on Monday, November 11. (Exhibit G)

31. Mr. Park did not call Mr. Kostopoulos back in order to schedule Mr. Harris deposition. (Exhibit G)

32. On November 12, 2013, Mr. Kostopoulos sent Mr. Park an email asking to set Mr. Harris' deposition. Said email writes: "Mr. Harris continues to be available for deposition. He is available at any time this week or next week. Please send me an email, ….. notifying us of when and where the deposition of Mr. Harris is to take place. …….. In order to minimize expense and maximize your convenience, Mr. Harris is also happy to submit to a telephone deposition or a deposition via Skype." (Exhibit I)

33. Mr. Park ignored the email requesting the setting of a deposition date. (Exhibit G)

34. Mr. Kostopoulos' email of November 12 also requested that the Kimm Law Firm meet and confer in order to resolve this matter. Said email writes: Additionally, we wish to resolve this matter and close the case pending in the Northern District

of Illinois. If it cannot be resolve entirely, we wish to narrow the scope of issues that Judge Holderman will be required to decide, and to minimize the litigation expenses for all parties. In order to do this, we will require a telephone conference. Please let me know when you are available for a telephone conference. Please email me the time(s) that you are available tomorrow, Thursday and Friday for a phone conference. Please let me know what telephone number you would like me to contact you at." (Exhibit G)

35. The Kimm Law Firm refused to meet and confer with Mr. Harris' attorneys and refused to take a deposition. (Exhibit G)

### III. ARGUMENTS

#### A. Rule 60(b) Authorizes Relief from an Order Where Justice So Requires

Fed. R. Civ. P. 60(b) provides for relief from an order under circumstances where a judgment is void because of lack of jurisdiction or has been obtained through fraud or misrepresentation, or for other valid reasons. Rule 60(b) is "essentially equitable in nature and is to be administered upon equitable principles." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1208 (7th Cir. 1984). Relief may be granted pursuant to Rule 60(b) "under exceptional circumstances," and the Seventh Circuit characterizes the district court's "considerable latitude" in deciding Rule 60(b) motions as "discretion piled on discretion." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012).

The Court will exercise its discretion to reconsider its order pursuant to Rule 60(b)(6), which allows relief from an order or judgment for "any . . . reason that justifies relief." See 11 Wright & Miller, Federal Practice & Procedure § 2857 (3d ed. 2010) ("A number of cases say that discretion ordinarily should incline toward granting rather than

9

denying relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue."). Here, there are several reasons why reconsideration is appropriate.

1. The Subpoena Was Improperly Issued

The 1991 Advisory Committee Notes to FRCP 45(a)(3)) require that the attorney from whom a subpoena issues must be admitted in that court. Here, the subpoena was issued from the Eastern District of New York. To properly issue the subpoena, Attorney Park must be a member of the Eastern District of New York. It is undisputed that at the time the subpoena was issued, Attorney Park was not a member of the Eastern District of New York, as Attorney Park has stated in his application for prohac vice admission to this district (D.E. 2). The subpoena was issued from the Northern District of Illinois for the benefit of the Eastern District of New York (D.E. 14-1). Therefore the subpoena was improper and dead on arrival.

2. The information sought is privileged and confidential

Calling opposing counsel as a witness is extremely problematic. *Johnstone v. Wabick*, 220 F.Supp.2d 899, 901 (N.D. Ill. 2002) (J. Bucklo). Problems that arise include: (1) the unfair and difficult situation which arises when an opposing counsel cross-examines a lawyer adversary and seeks to impeach his credibility, and (2) the appearance of impropriety created situation where a lawyer may well be destroying the truth for the sake of his client. *Johnstone*, 220 F.Supp.2d at 901.

In considering whether to allow an attorney to be called as a witness at trial, the Seventh Circuit adopted the following test: (1) no other means exist to obtain the information sought other than to depose Mr. Harris; (2) the information sought

10

is relevant and non-privileged; and (3) the information is crucial to the preparation Plaintiff's case. *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 464 (N.D. Ill. 2008) (Nolan, M.J.) (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). (D.E. 9)(Minute before the Hon. Holderman)

Here, the subpoena requested the following documents:

1. All trademark filing file relating to "Sik Gaek" or "sikgaek" trademark, as a single letter, two letters, logo, independent, or part of a mark.

2. All trademark filing file relating to any trademark filed by Daniel Kim and/or Yogi's II, Inc.

3. Any documents relating to licensing, assignment, or other transfer of any SikGaek" or other trademark by Daniel Kim and/or Yogi's II, Inc.

It is undisputed that all trademark filings in the U.S. are publicly available on the USPTO website. The question is whether the trademark files and the licensing and/or assignments in this case are privileged and confidential. A document may be protected by the work product privilege if it is created by an attorney "in anticipation of litigation." FED. R.CIV. P. 26(b)(3); *Logan v. Commercial Union Ins.* Co., 96 F.3d 971, 976 (7th Cir. 1996). The party invoking the attorney-client or work product privilege bears the burden of establishing that the privilege applies. *BDO Seidman*, 337 F.3d at 811; *Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1998 WL 293002, at *2 (N.D. Ill. May 28, 1998). Here, aside from the publicly available filed trademarks, any other documents in Daniel Kim/or Yogi's II, Inc. files were work product documents created by Attorney Harris, including trademark assignments and various trademark applications. These documents reflect mental impressions of attorney Harris and privileged

11

communications between attorney Harris and his client Daniel Kim. Plaintiff has not provided any evidence to the contrary.

Furthermore, to depose attorney Harris, the Plaintiff has the burden to prove:

1. There are no other means to obtain the information in Attorney Harris' files;

2. That the trademark information, licensing and assignments are not privileged; and

3. That the information contained in the attorney's files were crucial to the preparation of the Plaintiff's case.

The Plaintiff has not attempted to meet its burden and presented no arguments or evidence in support of enforcement of its subpoena. The Plaintiff could and should have obtained all information regarding any assignments, licensing or transfer of any SikGaek or other trademarks from Defendant Yogi's II, Inc. and/or Daniel Kim through discovery. The Plaintiff had legitimate ways to obtain the information without deposing attorney Harris or sending him a subpoena for privileged and confidential documents. More troubling is that the Plaintiff's case in the Eastern District of New York has been pending for three years since 2010. Clearly, the information contained in the attorney's files were not crucial to the preparation of the Plaintiff's case given that three years has passed before the Plaintiff sent out its subpoena to the attorney.

B.    <u>Relief From an Order Should Be Granted Because of Plaintiff's Misrepresentation</u>

Relief from judgment can also be granted under Rule 60(b)(3) where it has been obtained by fraud, misrepresentation or misconduct by an opposing party. Once a Rule 60(b)(3) movant provides clear and convincing evidence of such misconduct, the district court must set aside the judgment unless the nonmoving party can demonstrate by clear and convincing evidence that its misbehavior "had no prejudicial effect on the outcome

of the litigation." *Jordan v. Paccar, Inc.*, 97 F.3d 1452, 1996 WL 528950, *9 (6th Cir. 1996). Under this Rule, a "misrepresentation" is "interpreted as an affirmative misstatement," and the definition of "fraud" encompasses a situation where the non-moving party has "volunteered information that would be misleading without the omitted material." *Id.* at *6. Rule 60(b)(3) also encompasses situations in which an officer of the court makes a false statement, whether by concealment or positive averment, which deceives the court and prevents an adversary from fairly and fully presenting his case. *See In Re. M.T.G., Inc. v. Taunt*, 400 F. Supp.2d 558, 565-566 (E.D. Mich. 2009) (finding that failure of bankruptcy trustee, as officer of the court, to disclose conflict of interest with creditor justified setting aside challenged order under Rule 60(b)(3)). Finally, Rule 60(b)(6) allows courts to relieve a party from judgment for any reason that "justifies relief."

The fact that a party has not been served supports the use of Rule 60(b)(6), and any doubt over whether to grant a motion to set aside an order or a judgment should be resolved in favor of the petition to set aside the order or the judgment so that cases may be decided on their merits. *Id*. at 433-434. Parties who have challenged the sufficiency of process may rely on Rule 60(b)(6) to present other defenses on the merits in order to set aside an order or a default judgment. *See, e.g., Operating Engineers Local 324 Fringe Benefit Funds*, No. 99-76062, 2009 WL 1799129, *4 (E.D. Mich. June 23, 2009) (party who raised argument of defective service under Rule 60(b)(4) entitled to argue alternative defense that he never signed consent judgment to set aside judgment under Rule 60(b)(6)); *Bank United v. Hamlett*, 286 B.R. 839, 844 (W.D. Va. 2002) (questionable service combined with fact that underlying claim would not have survived a motion to

13

dismiss warranted judgment being set aside under Rule 60(b)(6)).

While a party seeking relief under Rule 60(b)(6) needs to show lack of prejudice to the plaintiff, a plaintiff is not prejudiced by the fact that it may lose a judgment it easily obtained. *Id*. at 843. Nor is a plaintiff prejudiced by the delay that may be caused as a result of Rule 30(b)(6) motion being granted; instead, there must be some tangible prejudice such as loss of evidence or increased difficulty in discovery. The Movant is entitled to relief under Rule 60(b)(6) regardless of whether the Court agrees with their Rule 60(b)(3) arguments because the Plaintiff never served Attorney Harris with the motion to enforce the subpoena (D.E.1) or any other documents filed in this case, with the exception of the order on October 22, 2013(D.E. 13), which was served by fax apparently on October 22, 2013, at the time when Attorney Harris was in New York celebrating his Father's 70th birthday. Furthermore, the Plaintiff attached false certificate of service to each documents filed in this case in that he has not served Attorney Harris with any document other than the order (D.E.13).

C. **ATTORNEY HARRIS' MOTION FOR A PROTECTIVE ORDER**

While Attorney Harris believes that the Plaintiff's subpoena was improper and that Plaintiff misled the court to issue the order compelling him to be deposed, Attorney Harris prays for a protective order prohibiting Plaintiff from deposing him or calling him as a witness or demanding production of any privileged and work product documents relevant to Attorney Harris' filing of trademark on behalf of his client Daniel Kim.

The Plaintiff has failed to demonstrate that the information sought is relevant to any major issue in the pending EDNY case. Plaintiff has also failed to show that there are no other means to obtain the trademark files and the licensing agreements of Yogi's II, Inc.

14

or Daniel Kim, other than obtaining these documents from Attorney Harris. The Plaintiff has failed to show that the need for this information outweighs the risks of deposing Attorney Harris. More Importantly, the Plaintiff has failed to show that the information sought is not privileged, consistent with the *Johnstone* standard. *Id*. at 220 F. Supp. 2d at 901.

D.      **CONCLUSION**

For all the foregoing reasons, the court should grant Attorney Harris' motion to vacate its order (D.E. 13) and grant a protective order motion barring the Plaintiff from seeking to depose Attorney Harris or seeking production of his client's, Daniel Kim and/or Yogi's II, Inc., trademark files.

                    Respectfully submitted,

                    /s/Martin E. Jerisat
                    Jerisat Law Firm
                    10 S. LaSalle St., Ste. 3500
                    Chicago, IL 60603
                    T: 312.332.0333